Good morning, Counsel. Good morning. May it please the Court, this is Taiga Varlack on behalf of Appellants, and I would like to reserve five minutes for rebuttal. All right. Please watch your time, Counsel. Yes, Your Honor. Your Honors, the trial court applied an entirely incorrect legal framework transforming a gender discrimination claim into an ADA claim. That structural error infected every ruling and foreclosed any possibility of justice for the unnamed women and named women in what started as a putative class action. This was a case of David v. Goliath, an inherently imbalanced litigation environment where unnamed women as well as the named plaintiffs came forward to try to stop systemic gender discrimination by United Parcel Service. This was like an infection because when the Court decided to change the legal framework that was pled as a gender-based discrimination claim as well as Equal Pay Act claims into an ADA claim, she created a trap room where nobody could win. With respect to the EPA and age claims, the Court accepted evidence from the defendant that should have been rejected because it was lacking credibility. Instead of doing so, she accepted the defendant's evidence and rejected our evidence, which was unlawful. Regarding the discovery abuse in this case, the Court rewarded the defendant for obstruction and for hiding the ball. The host in this case, which was the case of Goins v. UPS, was vulnerable because there was a structural imbalance. And when the Court made a decision at the second amended complaint to change the structure of the argument to only being one that could be gender-based, failure to accommodate, she left all plaintiffs with no opportunity to win. And that pathogen infected the entire case going forward, including every ruling, every discovery order, and ultimately the judgment. Ms. Farley, I was going to ask, so as I understand it, you're challenging the District Court's ruling on the denial of the motion to dismiss. Was that the stage where you assert that the District Court sort of reconfigured what this case was about? Yes, Your Honor. Do you have standing to assert a challenge to a denial of the motion to dismiss if you're the prevailing party? Yes, Your Honor. And that was briefed in the reply. I do have standing under Supreme Court authority in that case. Tell us why. One second. The reason why the Court retains jurisdiction to hear the case with respect to the standing issue is because the Court may correct legal errors even where they are in the appellant's favor. And that was actually decided in the case of Public Service Commission v. Brashear Freight Lines, which was 306 U.S. 204. And in that case, the Court held that a prevailing party could not appeal an injunction because at that time, there was nothing left for the Court to do. However, in this case, there is a reason for the Court to make a difference, and that is that there was a legal error in how the case was set up. And the Court has held that it can retain jurisdiction where it is just simply coming back in to correct a legal error. And so we do have standing. And when would you have challenged it now, or should you have tried to file a notice of appeal after the Court's motion to dismiss order? The reason why we're challenging it now is because the injury was not fully formed until the dismissal of the claims when the Court decided that its own reasoning, which was that the only exhausted allegations were failure to accommodate based on gender. When the Court used that reasoning to deny us relief, that was when the injury formed. So I could not have appealed it any earlier because we did not know that the Court was not going to apply the law correctly until we were at the summary judgment stage. So the issue became ripe when the case was dismissed. Okay. I just want to make sure, sorry. So the error that you think is reflected in the opinion in your favor on the motion to dismiss was what precisely? Because as I read the complaint, I mean, you have a gender discrimination claim, but a lot of the actions that you're complaining about are failure to accommodate. So I guess I can say I sympathize to agree with the District Court as being somewhat confused about whether this was a disability claim or a gender claim. Well, we can get there, Your Honor. So just to be precise, at ER 32, which is at lines 14 through 18, the Court states that second amended complaint, paragraph 58, the only allegation that has been administratively exhausted by Goins is a denial of a reasonable accommodation. So she framed, the Court framed the argument in that this was the only structure that I was able to use. So the Court set it up that way. And then if you go to ER 90 through 91, which is the order on a set of order sustaining and partially dismissing the second amended complaint, the Court lays out in its final paragraphs on pages 90 through 91 of the order, what actually is allowed. And it is, chapter and verse, disparate treatment based on a denied reasonable accommodation based on a gender violation of both Title VII and FEHA. And also, Lopez's disparate treatment was the denied reasonable accommodation based on gender. And then she goes on to discuss Jones. The point of this argument is that the Court made the pleadings very, very narrow to the point that all I could argue was an accommodation. And then when we got to the summary judgment stage, she said, well, guess what? All of the case law in this circuit says that you cannot argue gender discrimination as an accommodation. I don't agree with that ruling, which is why I'm here. And my position is that under Muldrow, as well as Chiu, as well as Lamb, the failure to accommodate is not the harm. It is the method of how the failure to accommodate was done that is the harm.  So suppose we agree with you on that. The district court also said that you still don't have a prima facie case at Step 1 in McDonnell Douglas because you haven't identified, or at least not with any specificity, that there were similarly situated men who, you know, you wouldn't need to show that there were men who were similarly in need of an accommodation and did get one, and you needed one and didn't get it. And you don't have evidence of that. So even if you're right about how we should think about failure to accommodate as an adverse action, why isn't that an independent basis for what the district court did? It's not because, Your Honor, we pointed to the respondent's evidence as well as our own evidence to show that this area that we're talking about, the small SOAR area, everyone has the same job. There are different types of ways of doing the job, but everybody has the same job. Everybody works the same shift. And we named the particular men who were involved in our papers, and we cited to it in our declarations. And so if you even look at pages 8 through 9 of the answering brief, the respondent itself explains what happens in the small SOARs and says specifically, I can't even read it for the record, the respondent says that everyone basically loads and unloads packages. That's what they're there to do. And so all people did the same thing. If you look at the declaration of Goins as well as Lopez and Jones-Jackson, they named individual men who performed the same jobs but were given an accommodation. Can I ask you to be more specific about it and maybe point to where in these declarations? Because I was, I think one of the points that the district court made was that there wasn't a description of what the men specifically were doing to be sufficient comparators to what the plaintiffs were doing. Because there's some, you know, I think there's some indication that some of the men have a different classification and SOAR paid differently and perform different work. So where in the declarations do they talk about what the men do versus what the plaintiffs did? Yes, Your Honor. Hold on one second. So at, so EOR 1012 through 1014, Lopez talks about the denial of the accommodations and the different people on her line. And then with respect to Jones-Jackson. But where in that does it describe what the similarities are between the people who received accommodations versus the job duties of the plaintiffs? I think that the, I think that the, that was in the Goins declaration and let me find it in my brief. So specifically, Your Honor, in the Goins declaration, she explains that there was a man named Matt who worked on the same line as her when she was doing the debugging position and that he was also disabled but he was given an accommodation without having to turn in ADA paperwork. And that's also cited in the court's order dismissing the case. And I can get that cite for you. So if you look at, because I look, I'm looking at paragraph 24 of the Goins declaration and it just says, Matt who was moved to a less demanding job without needing ADA paperwork despite also being disabled. But I don't see anything about what Matt does in relation to the plaintiff to make the premium officiate case for prong four. Right. And so what I was saying is if you even, if you were even to accept that, the evidence that was submitted by both the respondents and the appellants sets the stage for where everybody worked. And maybe that wasn't as clear as it needed to be pointed out. But what I'm arguing today is that this area is where everything happened and everybody had a similar job of both unloading and loading trucks. That's what they were there to do. And so it followed that when the person was working on the same line as Ms. Goins, for example, that they were performing the same job. And it also is evident by the collective bargaining agreement which was used to support the denial of the Equal Pay Act claim where the court goes through it and says that this is the reason why this person received more money is because they had a different job title despite them working in the same area. And there's case law that says that you don't have to have everything the same in order for it to be a comparator.  But you need to have something to put meat on the bone as to what it is that people are doing in order to become sufficient comparators, right? Yes. Can I ask you this? Are there people with different classifications and skilled positions in that same sorting area? Only the tenders. The tenders. And our arguments didn't have anything to do with the tenders. Our arguments had to do with baggers, de-baggers, and sorters which are all considered to be the same classification. And additionally, Your Honor, what I'd like to point out to the court is that our position is that when the lower court decided that everything had to be looked at as a disability failure to accommodate claim, the qualification itself of being able to perform the job, much less identify a comparator, was infected because we only could look at it from the lens of what job the disabled person was able to do. So I wasn't even able to set up a prima facie case because the court set up the game board in a way that was untenable. No plaintiff could have won this case because she said, as long as you're talking about an accommodation for someone who happens to be a woman, it's not legal. There's no cause of action for that. So it didn't matter what man or woman or any other comparator I showed because it was never going to fit into that puzzle that the court created. And now with Muldrell, we know it was not good law because a change in the job doesn't need to be material when it is based on a discriminatory factor such as one's gender, and that's what happened here. Counsel, did you want to save some time for rebuttal? Yes, thank you. Thank you, Counsel. Good morning. May it please the court, Elizabeth Brown for the defendant and appellee. Sorry, it's my first time. United Parcel Service. Thank you for your time. I'd like to address a couple of the issues that were raised by the appellants just now in the argument and then move on to the analysis of the court's decision. Specifically, it is our position that this court cannot evaluate or reconsider decisions that were made in appellant's favor at the motion to dismiss stage. The case that was just mentioned in the opening argument, the Public Service Commission of Missouri versus Bradshire Freight Lines, that's 59 Supreme Court 480. It does not stand for the proposition that this court may consider rulings that were favorable to the appellant and reconsider them. In fact, it actually denied that proposition right there in the decision. The one appeal was of one of the cross complaints in that particular case and the court said we have no jurisdiction to consider it. But Ms. Brown, let me ask this. Even if that's so, is it a problem that the district court construed the claims as being a failure to accommodate when what was actually being alleged is certain men were being accommodated in this informal manner but not the women, which is a disparate treatment claim? Of course. The court, I just want to be clear that the court did not construe this case as a failure to accommodate and I think it's important to look at the history of this case. This case began as a nationwide class action against UPS on behalf of all women at UPS regardless of their positions, regardless of their job classifications. That's how this case began. It had the original three plaintiffs plus it was fled on behalf of the entire class of all women at UPS. Then there was an amendment to the complaint, the first amendment complaint that added about 13 other plaintiffs but still kept it as a class action on behalf of all women at UPS. And then in so construing it or rather in choosing to plead this as a class action, the plaintiffs who are the masters of their own complaint clearly did not want to plead a failure to accommodate, right? A failure to accommodate claim as a class claim is very difficult to do. It is arguably easier to try to plead a gender discrimination class action, an Equal Pay Act class action. So they chose not to bring a disability discrimination claim. They chose not to bring a failure to accommodate claim on the class-wide basis. I'm not sure you're answering my question. What the district court seemed to do was treat the claims as, for example, for Ms. Goins, she was not accommodated and was forced to stand as opposed to the claim being this happened to her despite a similarly situated male colleague being allowed to be accommodated. Right. So then the district court was then faced with a first round of briefing and then the second amendment complaint which was framed by the plaintiffs again themselves. And in the second amendment complaint, and I think that Your Honor alluded to that earlier, in the second amendment complaint, there is a section of the second amendment complaint where the plaintiff herself characterized it as UPS systematically violates the ADA by telling women employees that you must be 100 percent healthy to go back to work and only offers reasonable accommodation to men. Then in paragraphs 221 and 222, this is on the excerpt of record 1532, in those paragraphs it talks about in the case of women, they're not provided accommodation. In the case of men, they're provided accommodation. Women are ignored and left without accommodation. So the plaintiff then, the court is faced with this complaint. In opposition to the motion to dismiss, the plaintiffs again themselves characterize the second amendment complaint. This is on excerpt of record 1440. They characterize the second amendment complaint as identifying the challenged practices that show a causal relationship. And then they say, in the cases of women UPSers, management does not follow the procedure set out in its code uniformly in that men are given accommodation without needing to turn in an ADA form and without contacting HR. So, and then they do the same in opposition to the motion for summary judgment where they frame it as, themselves frame it as a gender-biased accommodation, essentially a gender-tainted accommodation process. And then they do the same in the opening brief on the appeal. So the court did not do something and pull something out of thin air. The court was looking at claims that are pled, which were Title VII and FEHA claims, which require exhaustion of administrative remedies. So the court was looking at the second amendment complaints and then looking at the CRD charges and the EEOC charges, comparing the two to figure out what can proceed forward. What is here that we can salvage to allow the plaintiffs to proceed forward because, of course, defense was moving to dismiss the entire case. So I guess I'm getting lost in your answer. Are you saying that plaintiffs did not allege that Ms. Goins, for example, did not receive an accommodation but a male employee did? No, I am not. I am not saying. So given that, right, an allegation of disparate treatment on the basis of sex, was it a mistake for the district court to focus only on the fact that she was not given an accommodation as opposed to doing a disparate treatment analysis instead?  Because as I see ER 32, the court starts getting into a notion of is the failure to accommodate a colorable adverse employment action as opposed to was the disparate treatment between two different employees a viable, a colorable claim? So the court only does that as part of its analysis of the gender discrimination claim. So the court, my point, Your Honor, in answering your question and going back to the plaintiffs' own allegations is to rebut this idea that the court set them on this untenable journey from which no plaintiff could win. That is plaintiffs' position here, that the court, the district court made an error and set them on this journey from which nobody could recover. It hamstrung their discovery. It hamstrung their proceedings. And I'm not asking about that. I'm not saying the plaintiffs set them on a course. All I'm asking is if the district court looked at this as just a pure reasonable accommodation claim, was that a problem because the allegation, at least some of the And the court, to be clear, did not do that. The court did not look at it as an accommodation claim. In other words, there was no failure to accommodate claim pled at all, right? A failure to accommodate claim would have its own elements. Let me just read, you know, at ER 32, accordingly, Goins' adverse employment action arguments are limited to not being given easier work assignments or a helper, being given harder work, and otherwise not being accommodated for her knee injury. These arguments ultimately allege that UPS did not provide reasonable accommodations for her knee injury. There's nothing in here that talks about in comparison to men who did receive those accommodations. So when the court got to that part, that was part of the McDonnell-Douglas analysis of the prima facie case of gender discrimination. That is how that opinion is structured. So for each plaintiff, the opinion is structured. There are claims for Title VII, which of course does not even have a disability component, right? A Title VII discrimination claim does not have a disability component. A FIHA, which does provide for disability discrimination, technically. But it's all structured as there is a gender discrimination claim under either FIHA or Title VII. Then for the plaintiff, Joan Jackson, there is an Equal Pay Act and the California Equal Pay Act. Let me ask it this way. Why isn't there a colorable claim for disparate treatment based on men receiving an accommodation and these plaintiffs not? So in the discussion related to adverse employment action, so first of all, in this case, there is not a colorable claim that any of the plaintiffs have because they could not, the court had concluded properly in our opinion that they could not meet the, they were not qualified for their job. In the case of the, none of them identified similarly situated employees, so none of them had met two, at least two of the four elements of the prima facie case. And then the court also concluded that they did not meet their elements on pretext. I mean, this court analyzed every single thing. It did not stop at any point. It gave alternate arguments. I understand, but why is it not a colorable claim? So as for the whether or not a failure to accommodate can, so it's not the claim of failure to accommodate as a gender discrimination. What this court in this motion for summary judgment decided is that an alleged denial of an accommodation, even if gender tainted, is not, as a matter of law, an adverse employment action, does not satisfy the adverse employment action prong of the McDonnell-Douglas standard. That is what Judge Hamilton concluded. And then she concluded that based on a number of cases. She cited, I think, about two pages worth of cases. But isn't that incorrect under Muldrow? I mean, in Muldrow, Justice Kagan mentioned that transferring someone to a different place, if it's done disparately, is enough to create an adverse employment action. It doesn't have to be a significant harm. It just has to be the disparate treatment. So Muldrow does not impact that particular piece of the analysis. Under Muldrow, so Muldrow, following Muldrow, what appears to no longer be the case is the Chang conclusion that there has to be a material change in a job.  So that seems to be the difference. Now, that's not — that's sort of a distinction without a difference for purposes of this case because, again, in this particular case, the court looked at the adverse employment action from two points of view. One was, as a matter of law, is something an adverse employment action? And she did that not by looking at whether a change is material or not material. That's implicating Muldrow. She looked at it just simply as, does failure to accommodate somebody, does that rise to — is that, as a matter of law, an adverse employment action under the disability statutes? And she concluded, based on the authority cited, that, like I said, there's about two pages worth of it, Doe and Barnett being two of them, that no court, no court has concluded that a failure to accommodate is an adverse employment action. Right. Let me ask you this. For Ms. Jones-Jackson, there was a finding that she was not qualified for her work. But as I understand it, she's been working at UPS, I suppose, part-time for 25 years. So why can't we infer that she's qualified for her position on the basis of that alone? I mean, how could she work at UPS for 25 years if she weren't qualified for her position? So for all of this, Your Honor, there is lots of things in — I know, but just answer this. I know there are lots of things. I know there are different off-ramps and everything else, but just answer that question. No, no, no. So in this case, there was no evidence that was presented by Plaintiff Jones-Jackson to suggest that she was qualified for the position that she was particularly seeking. She was arguing about in — let me just make sure I find the specific conclusion. So the court concluded — so this is on ER 48. The court concluded that Plaintiff Jones-Jackson argues that she was qualified because she was doing her job. But then the court said the plaintiff here provides a coherent citation to evidence. However, the paragraphs of Jones-Jackson's declaration that she cites are completely irrelevant to the argument presented in the brief and do not support the claim that she's qualified. So in this case, it was a failure of evidence. In other words, plaintiff did not provide sufficient evidence. Right, and so my question is, if she's worked at UPS for 25 years seeking a full-time position, why couldn't we — why doesn't that allow us to make a reasonable inference that she was qualified in order to surpass at least a low threshold for a prima facie case? Because, Your Honor, for Plaintiff Jones-Jackson, if I'm recalling the record correctly, there was a — she — the jobs in small sort have specific weightlifting limitations, and the — and each of the plaintiffs, none of the plaintiffs at the time of this case was pending or at the time of the summary — and at the time of the summary judgment decision or briefing, none of them were actually working. They were all on leaves of absences because they could not lift the requisite amount of weight. So having worked at UPS for a long time does not necessarily mean that any particular given point in time you can do the physical job.  So that's where the — and then the judge said there is an absence of fact in the record. And I have very little time, and I just want to point out, Your Honor, is that this particular defect in the briefing below continues through the appellate briefing. There are citations in the appellate brief that either misrepresent the record or do not actually rise to the level — well, really do not represent the record correctly. For instance, in the opening brief on page 33, there is ostensibly a quotation from the court. It is not. It is my quote. It's a quotation of me from the argument. And there are references to the record that are represented as evidence but are actually argument from the ruling below or just simply briefs. They're not deposition citations or anything like that. Thank you, Your Honor. Thank you, counsel. Rebuttal. So I just wanted to set the record straight. The case is Norton v. Matthew, and that was in my brief, 427 U.S. 524. And in that case, the Supreme Court said that they could disturb a ruling that was otherwise favorable to correct procedural errors, and that's what we're asking this court to do because there was a major procedural error in which my case was framed as one as a failure to accommodate when it was a discrimination claim based on gender. And we're not saying that the accommodation itself was what we were arguing about. It was the failure to give it in an equal fashion because my clients happened to be female. Thank you, counsel. Any other questions? Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, SANCHEZ